**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ROSIE M. SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:05cv0478** |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | **Judge Thomas A. Wiseman, Jr.** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

This case was referred to United States Magistrate Judge Juliet Griffin pursuant to 28 U.S.C. §

636(b)(1)(B).  Subsequently, Plaintiff Rosie M. Smith filed a motion for Judgment on the Administrative

Record, seeking an order reversing the determination of the Administrative Law Judge ("ALJ") or, in the

alternative, remand of this matter pursuant to the fourth sentence of 42 U.S.C. § 405(g).  (Doc. No. 13.)

Defendant Commissioner of Social Security filed a response in opposition to Plaintiff's motion.  (Doc. No.

15.)[2]  In turn, Plaintiff filed a reply to Defendant's response.  (Doc. No. 16.)  Magistrate Judge Griffin filed

a Report and Recommendation ("R&R") recommending that Plaintiff's motion be denied and that the

decision of the Commissioner be affirmed.  (Doc. No. 18.)  Plaintiff has filed a timely objection to the

Magistrate Judge's R&R.  (Doc. No. 19.)

Plaintiff objects to Magistrate Judge Griffin's finding that the ALJ's evaluation of the medical

opinions of Plaintiff's treating psychiatrist complied with the relevant regulations.  Plaintiff also objects to

Magistrate Judge Griffin's finding that the ALJ gave a non-examining state agency psychological

consultant's opinion appropriate weight.  Plaintiff contends that either of the ALJ's alleged misevaluations

merits reversal and remand.  Plaintiff also argues that the ALJ's decision is not supported by substantial

evidence in the record.  Defendant did not file a response to Plaintiff's objection.

---

[1]    Michael J. Astrue replaced Jo Anne B. Barnhart as the Commissioner of the Social
Security Administration on February 12, 2007.  Pursuant to the Federal Rules of Civil Procedure,
Commissioner Astrue automatically replaces Ms. Barnhart as the defendant in this case.  Fed. R. Civ. P.
25(d)(1).

[2]    Defendant filed two identical responses.  (Doc. Nos. 15, 17.)  The second filing (Doc. No.
17) will be disregarded.  (Doc. No. 18, at 2.)

The Court has reviewed *de novo* the entire record and the pleadings, with particular attention to those portions of the record that are relevant to Plaintiff's objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). For the reasons set forth herein, the Court will reject Magistrate Judge Griffin's R&R. The Commissioner's decision denying benefits will be reversed and this matter remanded for further proceedings consistent with this opinion.

I.      **INTRODUCTION**

   A.      **Procedural History**

Plaintiff filed for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on September 6 and September 7, 2001, respectively, alleging a September 3, 2001, onset of disability due to depression, mental retardation, and headaches. (Doc. No. 6, Administrative Record ("AR") 58-61, 425-28.) Upon initial review and reconsideration, the Social Security Administration determined that Plaintiff was not disabled and therefore did not qualify for SSI or DIB. (AR 30-38, 41-42, 429-39.) Thereafter, Plaintiff requested a hearing before an ALJ. (AR 42-43.) On October 29, 2003, a hearing was held in Nashville, Tennessee before ALJ Mack Cherry during which Plaintiff, a witness for Plaintiff, and a vocational expert testified. (AR 440.) In his decision dated July 16, 2004, the ALJ held that Plaintiff was not entitled to DIB and was ineligible for SSI. (AR 25.) Considering the record before him, the ALJ made the following findings:

>   1.   The claimant [Plaintiff Smith] meets the nondisability requirements for a period of disability and [DIB] set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
>   2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
>   3.   The claimant's depression and estimated borderline intellectual functioning are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).
>
>   4.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
>   5.   The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
>   6.   The claimant has the residual functional capacity as described in the body of the decision.

7.      The claimant's past relevant work as a housekeeper did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(AR 24-25.)  On April 18, 2005, the Appeals Council denied review, making the ALJ's decision the final decision of Defendant Commissioner of Social Security.  (AR 5-7.)

Plaintiff filed this civil action, which is in this court pursuant to 42 U.S.C. § 405(g), on June 15, 2005, and the case was referred to United States Magistrate Judge Griffin for consideration.  Thereafter, Plaintiff filed a Motion for Judgment on the Administrative Record seeking reversal of the Commissioner's decision.

Magistrate Judge Griffin filed a comprehensive R&R on March 27, 2008, recommending that Plaintiff's motion be denied and the findings of the Commissioner be affirmed.  (Doc. No. 18.)  Magistrate Judge Griffin concluded that (1) "the ALJ complied with the procedural requirements prescribed by controlling regulations and case law in evaluating the treating source's diagnosis," (2) "the case law offered by [Plaintiff] does not require the ALJ to reject the non-examining source's findings in favor of the treating source's opinion" and "the ALJ's decision to accept the opinion of the non-examining state psychological consultant was not contrary to procedural requirements," and (3) "there was substantial evidence to support [the ALJ's] findings."  (Doc. No. 18, at 33, 35, 37.)

Plaintiff timely filed objections to Magistrate Judge Griffin's R&R.  (Doc. No. 19.)  The matter is now before this Court.

**B.      Factual Background**

Since the facts of this case are fully detailed in the R&R submitted by Magistrate Judge Griffin (*see* Doc. No. 18, at 2-23), only those facts relevant to Plaintiff's objections need be recounted.

Plaintiff alleges a disability onset date of September 3, 2001.  The medical records in the administrative record cover the period from May 2001 to May 2004.

**1.      Southstreet Family Medical Center**

Records from Southstreet Family Medical Center refer to Plaintiff's visits on May 3 and June 5, 2001.  At her May 3 visit, Plaintiff's complaints included back pain, headaches, and weight loss.  During

that visit, Plaintiff was diagnosed with depression, headaches, and joint pain. (AR 158.) A month later, on June 5, Plaintiff was again diagnosed with depression. (AR 157.)

### 2. Dr. William O'Brien

In response to Plaintiff's September 2001 application for SSI and DIB, Plaintiff was referred to William O'Brien, Psy. D., for a psychological evaluation. During the resulting November 11 evaluation, Plaintiff, according to Dr. O'Brien, "provided inconsistent information," "easily g[a]ve up on tasks," and "frequently responded, 'I don't know.' " (AR 159.) Accordingly, Dr. O'Brien could not make "firm conclusions," further advising that "the results of this evaluation have to be viewed with extreme caution." (AR 159, 163.)

However, on the basis of his evaluation, Dr. O'Brien concluded that Plaintiff has "marked, limited intellectual functioning." (AR 162.) Dr. O'Brien's report also included the results of a WAIS-III, on which Plaintiff obtained a Full Scale IQ Score of 61, placing her in the bottom half of the first (0.5) percentile. (*Id.*) Plaintiff's Verbal IQ Score and Performance IQ Score were in the first percentile. (*Id.*)

### 3. Mental Residual Functional Capacity (RFC) Assessment & Psychiatric Technique Review

A non-examining government psychologist, Victor O'Bryan, Ph.D, performed a Mental RFC Assessment and a Psychiatric Technique Review on December 6, 2001, based on his review of Plaintiff's medical records. (AR 164-81.) According to Dr. O'Bryan, Plaintiff has a markedly limited ability to carry out detailed instructions. (*Id.*) All other mental abilities were determined to be either moderately or not significantly limited. (AR 164-65.) Dr. O'Bryan also noted that Plaintiff can perform "simple work." (AR 166.) The psychiatric review diagnosed unspecified forms of depression and mental retardation. (AR 168, 171-72.) According to the review, these diagnosed conditions did not "markedly" limit Plaintiff's mental functioning. (AR 178.) In his notes, Dr. O'Bryan wrote, "IQ scores appear invalid," "poor effort," and "inconsistent information." (AR 180.)

### 4. Mental Health Cooperative

On February 8, 2002, Plaintiff's "self-sufficiency" counselor referred Plaintiff to the Mental Health Cooperative ("MHC") to address Plaintiff's suicidal intent. (AR 376, 219-20.) MHC's physician's progress notes from that day indicate a diagnosis of recurrent severe major depressive disorder with psychotic features and cite a GAF score of 55. (AR 222.) In further visits to MHC, Plaintiff was diagnosed with

major depressive disorder ("MDD") on February 15, March 1, April 4, April 30, May 28, June 11, July 30, August 26, September 27, October 25, and December 11, 2002; January 8, February 5, March 5, April 2, May 5, June 9, July 9, August 6, September 3, September 8, and October 15, 2003.  (AR 188-238.)  On several of those visits, Plaintiff's MDD was diagnosed as severe and/or having psychotic features.  (AR 188-207, 213, 216-18, 232-37.)

From December 11, 2002, through October 15, 2003, David Chang, M.D., was Plaintiff's psychiatrist at MHC.  (AR 183-206, 231-38.)  On February 5, 2003, Dr. Chang completed a Medical Source Statement relating to Plaintiff's ability to do work-related activities.  (AR 183-87.)  Dr. Chang noted Plaintiff's severe MDD and placed Plaintiff's GAF at 55 with a score of 60 as the highest during the previous year.  (AR 183.)  Dr. Chang estimated Plaintiff's chances of recovery to be "marginal."  (AR 184.)  Dr. Chang also noted that Plaintiff suffered "on-going back and other pain symptoms," which was exacerbated by Plaintiff's depression.  (*Id.*)  Throughout the statement, Dr. Chang estimated a variety of Plaintiff's mental abilities as "poor or none."  (AR 185-86.)  With regard to activities of daily living, Dr. Chang assessed Plaintiff as moderately limited.  (AR 186.)  However, with regard to maintenance of social functioning, Dr. Chang noted Plaintiff's difficulties as "marked."  (*Id.*)  Dr. Chang also determined that Plaintiff has "marked" difficulties in maintaining concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere).  (*Id.*)

### 5.    Centerstone Community Mental Health Center

During the time that Plaintiff was a patient at MHC, Plaintiff received therapy at Centerstone Community Mental Health Center on a regular basis.  (AR 242-330.)  Notes from Centerstone relate to conversations between Plaintiff and Centerstone therapists.  These notes indicate that Plaintiff was concerned about, for example, her relationship with her boyfriend, receiving Social Security benefits, her children, and her finances.  Around September 2002, January 2003, and September 2003, Plaintiff reported suicidal ideation to her Centerstone therapist.  (AR 252, 254, 286, 289, 313, 325, 328.)  During all other visits, Plaintiff denied suicidal ideation.  On June 17, 2003, Centerstone completed a CRG Assessment of Plaintiff's functioning (AR 266-68.)  The assessment noted that Plaintiff was moderately restricted in all available categories, including activities of daily living; interpersonal functioning; concentration, task performance and pace; and adaptation to change,  (AR 266-67.)  Because Plaintiff's

restriction was at least moderate in all categories, Plaintiff's impairment was marked as severe. (AR 267.)[3]

## II.    STANDARD OF REVIEW

Plaintiff filed objections to the Magistrate Judge's R&R, so the Court will review the portions of the record pertaining to the objections *de novo*. Fed. R. Civ. P. 72(b); *Massey v. City of Ferndale*, 7 F.3d 506 (6th Cir.1993).

In this case, it must be determined whether the Commissioner's decision (1) "applie[s] the correct legal criteria" and (2) is "supported by substantial evidence." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007). The decision is supported by "substantial evidence" if it is supported by "such evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). However, if the decision fails to apply the correct legal criteria, it may be reversed even if it is otherwise supported by substantial evidence. *Bowen*, 478 F.3d at 746.

The ALJ's decision is the final decision of the Commissioner in this case, so the Court must determine whether that decision meets the standard set forth above. The ALJ in this case utilized the five-step analysis required by regulation. (AR 19.) At the fourth step, the ALJ, purportedly "considering all the evidence of the record," concluded that Plaintiff could perform her past relevant work as a housekeeper, and, accordingly, found Plaintiff not to be disabled. (AR 24-25.) Analysis of the Plaintiff's objections will focus on the ALJ's conclusions at this step.

## III.    PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S R&R

### A.    Whether the ALJ Gave "Good Reasons" for the Weight Assigned to Plaintiff's Treating Source's Opinion

Statute directs the Social Security Administration's analysis of a claimant's treating physician's opinion. If the opinion of a "treating source" is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it must receive "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If a treating source's opinion is not given "controlling weight," specified factors must be used to determine what weight

_____
[3]    The record also includes notes from Centerstone covering October 2003 through May 2004, which are consistent with previous notes. (AR 382-424.) These records were received post-hearing.

such an opinion will receive, and "good reasons" must be given in the determination or decision to explain the resulting weight given to the treating source. *Id.* In giving "good reasons," the Administration, in a denial of benefits, must provide "specific reasons for the weight given to the treating source's medical opinion, *supported by the evidence in the case record.*" SSR 96-2p, 1996 WL 374188, at *2 (SSA July 2, 1996) (emphasis added). The "specific reasons" must be so specific as "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

It is undisputed that Dr. Chang qualifies as a "treating source." *Accord* 20 C.F.R. § 404.1502 (defining "treating source"). Addressing the entirety of Dr. Chang's opinions, the ALJ said, "[T]he medical source statement provided by Dr. Chang . . . is assigned little weight because of the inconsistencies discussed above." (AR 23.) The "inconsistencies" that the ALJ was referring to, the Court assumes, were (1) the alleged inconsistency between the GAF score and Dr. Chang's estimated degree of limitations, and (2) the alleged inconsistency between Dr. Chang's notation of Plaintiff's pain and other medical records indicating Plaintiff had no pain or abated pain. (AR 22.) As a whole, the Court finds this explanation fails to provide "good reasons" for giving Dr. Chang's opinion "little weight."

As the ALJ correctly stated, according to the DSM-IV, "a GAF between 51 and 60 represents moderate symptoms or moderate difficulty in social, occupational or school functioning." (AR 22.) Thus, according to the ALJ, Dr. Chang's documentation of "marked" limitations was inconsistent with the "moderate" degree of limitation correlating with Plaintiff's GAF scores of 55 and 60. (*Id.*) However, the ALJ failed to explain why a GAF score superseded Dr. Chang's more precise opinions.[4] By the ALJ's logic, Dr. Chang's functional assessment was unnecessary because Plaintiff's GAF score conclusively determined that her limitations were "moderate." Yet, a GAF score is merely superficial:

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

---

[4] In fact, the Social Security Administration has cautioned: "[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings." Revised Medical Criteria for Evaluating Mental Disorders, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000).

*Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 503 (6th Cir. 2006)). Essentially, the ALJ used unqualified data, provided by the professional as a macroscopic evaluation, to disprove the professional's more detailed, expert functional assessment.

The ALJ also cited Dr. Chang's notes relating to Plaintiff's exacerbated "on-going back pain and other pain symptoms" as inconsistent with the record. (AR 22.) A year and a half before Dr. Chang made this note, Plaintiff reported back pain at Southstreet Family Medical Center, which the ALJ failed to mention in his decision. (AR 158.) The ALJ did refer to other records where Plaintiff indicated pain when he stated, "[R]ecords from Vine Hill Community Clinic . . . state that claimant complains of various aches and pain that are abated with Tylenol." (AR 22.) The records from November 2003 to which the ALJ referred actually state, "HEADACHES. [Plaintiff] believes these to be migraine related. She takes no meds for these. Pain occurs off and on ande [sic] is abated with tylenol *typically*." (AR 379 (emphasis added).) This record leaves open the possibility that Plaintiff's pain was sometimes not abated, in which case that pain could be exacerbated by her depression, as Dr. Chang concluded.

In sum, the GAF score, alone, cannot discredit Dr. Chang's assessment of Plaintiff's limitations, and Dr. Chang's notes on Plaintiff's "on-going back pain and other pain symptoms" are not inconsistent with the record. The ALJ's reference to supposed "inconsistencies" is therefore insufficient to provide "good reasons" for his assignment of "little weight" to the opinions of Dr. Chang, a treating source.

**B. Whether the ALJ Gave Appropriate Weight to the Non-Examining State Agency Psychological Consultant's Opinion**

As a general rule, "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (quoting *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). The ALJ in the case, considering the evaluation of a state agency psychological consultant, stated: "The opinion of Dr. O'Bryan is accepted and entitled to greater weight [than Dr. Chang's opinion], because it is consistent with the objective medical evidence and the record as a whole." (AR 23.) In fact, Dr. O'Bryan's opinion conflicts with the assessment of Dr. Chang. For example, in their evaluations of Plaintiff's ability to remember work-like procedures, Dr. O'Bryan judged Plaintiff as "not significantly limited," whereas Dr.

Chang checked "poor or none." (AR 164, 185.)[5] Evaluating Plaintiff's ability to work in coordination with or proximity to others without being distracted by them, Dr. O'Bryan checked "not significantly limited," but Dr. Chang marked "poor or none." (*Id.*) Again, assessing Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors, Dr. O'Bryan checked "Not Significantly Limited," while Dr. Chang marked "poor or none." (AR 165, 185.) Finally, regarding Plaintiff's ability to set realistic goals or make plans independently of others, Dr. O'Bryan noted "Not Significantly Limited," while Dr. Chang marked "poor or none." (AR 165, 186.)

The inconsistencies between the two doctors' opinions is discernible, and, without giving adequate reasons for discrediting Dr. Chang's opinion, the ALJ was not justified in giving the opinion of Dr. O'Bryan, a non-examining consultant, greater weight than that of Dr. Chang.

The ALJ's error in assigning unjustified weight to these doctors' opinions is not "harmless" and warrants remand. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (concluding that an ALJ's failure to follow 20 C.F.R. § 404.1527(d)(2) deprives a claimant of "substantial rights" and merits remand); *Barcelona v. Astrue*, 2008 WL 321306, at *7 (S.D. Ohio Feb. 1, 2008) (discussing types of legal errors that may be "harmless").

**C.      Plaintiff's Contention that the ALJ's Decision is not Supported by Substantial Evidence**

Since this Court has determined that the ALJ committed legal error that merits remand, a "substantial evidence" analysis is unnecessary. *See Fisk v. Astrue*, 253 Fed. Appx. 580, 586 (6th Cir. 2007) ("We cannot engage in meaningful review of the ALJ's decision because [the ALJ's] reasoning is not sufficiently specific to make clear that the ALJ realized the nature and extent of [the plaintiff's treating source's] treating relationship." (internal quotation marks and citations omitted)).

Instead, on remand the ALJ should reconsider whether Dr. Chang's opinion is consistent with substantial evidence in the record. If it is, then it deserves "controlling weight." If it is not, then the ALJ

_____

[5]      In the form completed by Dr. O'Bryan, levels of limitation include "Not Significantly Limited," "Moderately Limited," "Markedly Limited," "No Evidence of Limitation in this Category," and "Not Ratable on Available Evidence." (AR 164-65.) On Dr. Chang's form, ability levels include "Unlimited or Very Good," "Good," "Fair," and "Poor or None." "Poor or none" corresponds to "[n]o useful ability to function in this area." (AR 185.)

must consider the factors listed in the relevant subsections of 20 C.F.R. § 404.1527(d) in deciding how much weight it deserves.[6]

IV.     **CONCLUSION**

The Court has reviewed *de novo* the entire record and the pleadings, giving particular attention to those portions of the record that are relevant to Plaintiff's objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The Court finds that the ALJ failed to give "good reasons" for the weight assigned to Plaintiff's treating source's opinions.  The Court also finds that the weight assigned by the ALJ to the opinions of the non-examining state psychologist was not justified.  Accordingly, the Court will reject the Magistrate's R&R and grant Plaintiff's Motion for Judgment.  The ALJ's decision will be reversed and the matter remanded for further consideration consistent with this opinion.

An appropriate Order will enter.


Thomas A. Wiseman, Jr.
Senior U.S. District Judge

---

[6]     This Court notes that Dr. Chang's treatment relationship with Plaintiff, covering a period of ten months during which Dr. Chang saw Plaintiff on eleven different occasions, is the longest and steadiest of those listed in the record.